Case: 3:21-cv-02099-JRK Doc #: 1 Filed: 11/04/21 1 of 13. PageID #: 1



FILED
NOV 04 2021
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Leena Shah
9432 Old Plank Lane
Brighton, Michigan 48114,

    Plaintiff,

vs.

The University of Toledo
2801 W. Bancroft
Toledo, Ohio 43606-3390

and

Christopher J. Cooper
The University of Toledo
College of Medicine and Life Sciences
213 Mulford Library
3000 Arlington Avenue
Toledo, Ohio 43614

and

Deepa Mukundan
The University of Toledo
College of Medicine and Life Sciences
111 Mulford Library

Case No. 3:21 CV 2099

JUDGE KNEPP

MAG JUDGE CLAY

COMPLAINT; JURY DEMAND
ENDORSED HEREON

3000 Arlington Avenue
Toledo, Ohio 43614

and

Randall G. Worth
The University of Toledo
College of Medicine and Life Sciences
109 Mulford Library
3000 Arlington Avenue
Toledo, Ohio 43614,

    Defendants.

## COUNT I
## TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. §§ 2000d ET SEQ.

1. The plaintiff, Leena Shah ("Shah"), brings Count I of this action pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., to address injury done to her by the defendant University of Toledo's ("UT") discriminatory treatment on the basis of her race and national origin.

2. Title VI prohibits recipients of federal financial assistance from engaging in discrimination based on race, color, or national origin in education programs and activities.

3. Shah is a citizen of the United States, residing in Brighton, Michigan. Shah is of Kashmiri descent.

4. UT is located in Toledo, Ohio.

5. UT is a recipient of federal financial assistance.

6. Shah was a student at UT in its College of Medicine and Life Sciences M.D. program from August 8, 2016 through November 5, 2019.

7. During her time as a student in the U.T. M.D. program, Shah successfully completed the preclinical curriculum with the exception of not taking or passing the USMLE (United States Medical Licensing Exam) Step 1.

8. One of Shah's advisors while a student in the M.D. program was Randall G. Worth ("Worth"), Ph.D., Associate Dean for Student Affairs and Admissions. Worth is white Caucasian American. Worth is not of Kashmiri descent.

9. Another of Shah's advisors in the UT M.D. program was Deepa Mukundan ("Mukundan"), M.D., Assistant Dean of Academic Affairs. Mukundan is of Indian descent. Mukundan is not of Kashmiri descent.

10. UT has a Leave of absence policy that allows a maximum total length of time on leave of 3 years. This policy allows for an extended USMLE Step 1 preparation or other approved education program. The policy includes the opportunity for the student considering a leave of absence (LOA) to meet with the Associate Dean to discuss their concerns. A copy of the policy is attached to this Complaint as Exhibit A and incorporated herein. On August 15, 2019, Shah signed off on a LOA left for her (Shah) in the lobby of the Office of Student Affairs (OSA). This form for Shah, which had been signed by Mukundan, stated a planned timeline of completion of USMLE Step 1 preparation from August 17, 2018 to April 15, 2019, with an anticipation that she (Shah) would keep Mukundan updated on her (Shah's) progress. However, students of non-Kashmiri descent were availed meetings with their dean to discuss the reasons for requesting such a leave, goals for such a leave, and the impact such a leave might have on progress towards the Doctor of Medicine (M.D.) degree. Their dean might have even initiated the conversation with the student. And, in 2019, one student who is of Indian

descent, who is not of Kashmiri descent, was told something along these lines after discussing her board study plan: "[to] take the time [the student] needed," and "not to worry as [any such time] would be documented as "research time" in applications to residency programs." In contrast, Shah put her signature on a LOA taken by a UT secretarial employee who could not discuss with Shah her (Shah's) board study plan and subsequently gave updates to Mukundan through monthly meetings that were arranged by the UT Office of Student Affairs.

11. Shah's meetings with Mukundan typically lasted 15-25 minutes. Mukundan did not offer any structure or plan of action for Shah to follow. During these meetings, Shah tried to engage with Mukundan on her ("Shah's") thought-out study calendar, including different topic(s) during each month, with the first-two thirds of it being dedicated to a "first pass" of the materials. Shah thought she (Shah) was providing the status of her preparation for the USMLE Step 1 and related concerns. But Mukunan exhibited a short attention span and often showed lack of interest in the study calendar and/or topics for an upcoming month. In addition, Mukundan did not set forth any progress milestones to gauge Shah's readiness for the USMLE Step 1. However, UT has a policy that allows for the OSA and student working together to develop a program of accountability and progress towards Step 1 preparation.

12. Before these meetings, Shah set a goal for each, such as what concepts she (Shah) should be able to explain, or how much knowledge should be built up to create the framework for all of the factoids to occupy. It became obvious to Shah in the follow-up meetings that there was lack of willingness and reluctance on Mukundan's part to even attend these meetings with Shah. The little feedback offered by Mukundan to Shah at the

meetings was almost entirely negative and focused on Shah as a person, asserting that Shah had character traits such as being argumentative and anxious, rather than giving Shah input into some of the difficult subject areas of the exam. At these meetings, she (Mukundan) showed no willingness to offer any purposeful advice or constructive feedback about Shah's question bank, Anki card deck scores, self-assessments, and other studying aids. However, according to UT policy, assessing whether further intervention is required is necessary to provide meaningful academic support and positive progress.

13. Shah repeatedly brought to Mukundan's attention at the meetings that she needed guidance to improve her level of preparation for the exam. Yet Mukundan's negative feedback continued instead of responding to Shah's concerns with sincerity about exam materials or giving Shah sincere guidance. Mukundan was dismissive of Shah's concerns, abrasive at times, losing patience while talking to Shah, and often attempting to trivialize the concerns that Shah had about some of the preparation materials. Shah needed guidance from Mukundan foremost as a teacher. This did not happen. The only thing that Shah understood from their meetings and that appeared immensely important to Mukundan was Mukundan aggressively demanding of Shah to schedule the exam, regardless of Shah's readiness to take the exam and the costs Shah would incur to continue to register blindly for the exam. When Mukundan aggressively demanded that Shah schedule the exam, it involved being physically taken by her (Shah's) body and moved across space to schedule her exam. However, Shah's plan of action included a project, or study, timeline to April 15, 2019. Effects of this needless aggression included: never knowing whether she (Shah) would be prepared on exam day, wasting money by

not avoiding rescheduling fees, and being distracted by a stressful deadline while she (Shah) was following a study timeline.

14. Mukundan told a non-Kashmiri student to take USMLE Step 1 by a specific date and pass the exam by a specific date or else the non-Kashmiri student would be withdrawn. Mukundan falsely told Shah that she (Shah) needed a passing score on the USMLE Step 1 before starting a clerkship. And, following her (Shah's) last meeting with Mukundan, OSA informed Shah that Mukundan had cancelled any further meetings with Shah and that Mukundan would contact Shah if more meetings were needed. Mukundan never contacted Shah to schedule further meetings. Clearly, the board study plan that was availed to a non-Kashmiri student was not availed to Shah.

15. Shah went on a leave of absence beginning August 17, 2018 for the purpose of preparation for the USMLE Step 1.

16. Pursuant to UT's M.D. program policy titled, "Medical student, grading, academic promotion, re-examination, remediation, dismissal, due process & appeals,"

> A Student who does not take or pass Step 1 and makes a decision, with proper approval and advisement from the Office of Student Affairs, to delay the start of clinical clerkships, must work with the Office of Student Affairs and the Department of Medical Education to develop a program of accountability and progress towards Step 1 preparation. A plan of action must include a planned timeline for completion of Step 1 and milestone markers for continued follow-up (return and report) to gauge readiness and assess if further intervention is required to provide meaningful academic support and positive progress.

UT, including Shah's advisors, Worth and Mukundan, failed to work with Shah in implementing this policy.

21. Shah's leave of absence which began on August 17, 2018 was initially approved for the period August 17, 2018 through April 15, 2019.

22. Shah requested an additional extension of her leave of absence effective beginning April 15, 2019 so that she could have additional time to prepare for the USMLE Step 1.

23. Shah's extended leave of absence which began on April 15, 2019 was approved for the period April 15, 2019 through August 17, 2019.

24. In May 2019 Worth informed Shah that if she did not take the USMLE Step 1 by June 7, 2019, her graduation would be delayed. In his email to Shah dated May 1, 2019, Worth stated the following: "As I stated earlier, as long as you take Step 1 by June 7, you can start a clerkship on June 10. If you wait any longer, you should simply take a year off because you won't be able to graduate on time." A copy of the email is attached to this Complaint as Exhibit B and incorporated herein.

25. On June 10, 2019, Shah requested an additional extension of her leave of absence from August 17, 2019 through April 13, 2020, so that she could have additional time to prepare for the USMLE Step 1 as well as doing research. UT neither granted nor denied Shah's request.

26. Shah was automatically dismissed from the UT M.D. program on September 30, 2019. The dismissal decision was formally communicated to Shah by Worth.

27. Regarding dismissal of a student in the UT M.D. program, UT has a policy that allows for due process prior to a dismissal decision being made. The policy includes the opportunity for the student to be heard by the Student Promotions Committee and/or the Medical Student Conduct and Ethics Committee. Shah was denied the opportunity to be heard by the Student Promotions Committee and/or the Medical Student Conduct and Ethics Committee prior to being dismissed from the UT M.D. program.

28. Non-Kashmiri students were availed hearings prior to being automatically dismissed from the UT M.D. program.

29. Worth, as of September 24, 2019, planned to refer Shah's case, i.e., whether she should be dismissed, to the Student Promotions Committee. However, either on September 24 or 25, 2019, Worth made the decision not to refer Shah's case to the Student Promotions Committee. See Exhibits C and D, copies of which are attached to the Complaint and incorporated herein.

30. Dismissal from the UT M.D. program is a more serious sanction than withdrawal from the program. This is because in a withdrawal situation, unlike dismissal, the student is eligible for readmission to UT's M.D. program or admission to another school's medical school program. UT has a policy that allows for withdrawal from the M.D. program in a situation where a leave of absence is not continued. A student who is white Caucasian American, who was on leave of absence preparing for the USMLE Step 1 exam, was withdrawn in lieu of being dismissed for failure to take or pass the USMLE Step 1. This student is not of Kashmiri descent.

31. Shah timely submitted an internal appeal of her dismissal on October 13, 2019. The dismissal was upheld by Christopher J. Cooper ("Cooper"), M.D., Dean of the College of Medicine and Life Sciences and Executive Vice President for Clinical Affairs, on November 5, 2019. Cooper is white Caucasian American. Cooper is not of Kashmiri descent.

32. Prior to upholding Shah's dismissal, Cooper informed Shah that she (Shah) would be contacted by a committee of faculty empaneled to hear her appeal. The committee did not contact Shah.

33. On November 1, 2019, Shah received an email communication from Cooper's office which stated that Cooper would like to meet with her and Worth to consider his decision. Shah contacted Cooper's office requesting Worth not meet with them.

34. Cooper met with Shah on November 5, 2019, prior to upholding her dismissal. At this meeting Cooper acknowledged that he had spoken with Mukundan regarding Shah, and that

Mukundan had told Cooper that Shah was not making progress in her preparation for the USMLE Step 1 exam.

35. In 2015, Cooper conditionally reinstated a white Caucasian American student automatically dismissed for USMLE Step 1. The student conditionally reinstated ultimately did not take the USMLE Step 1 by the deadline on which the student's reinstatement was conditioned; however, the student's dismissal was changed to a withdrawal so that the student could leave UT's M.D. program with a withdrawal instead of the more damaging sanction of dismissal. This student is not of Kashmiri descent. At her (Shah's) appeal meeting, Cooper disclosed stereotypical opinions around Shah that he had formed including that she (Shah) was, *inter alia*, argumentative.

36. Shah's dismissal from UT's M.D. program, as well as the other actions and inactions of UT, by its officials, as set out in this Complaint, occurred, at least in material part, due to Shah's race and national origin.

37. UT, through its officials, engaged in intentional discrimination.

38. As a result of UT's discriminatory conduct toward Shah, she has been unable to continue and complete her medical school education.

39. As a result of UT's discriminatory conduct toward Shah, she suffered and continues to suffer emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and harm to her reputation.

40. As a result of UT's discriminatory conduct toward Shah, she will suffer lost income opportunities, which includes future lost earnings and benefits.

<div align="center">

COUNT II
PROCEDURAL DUE PROCESS
42 U.S.C. § 1983

</div>

41. The allegations set forth in paragraphs 1 through 40 of the Complaint are incorporated herein by reference.

42. Shah brings Count II of this action pursuant to 42 U.S.C. § 1983, regarding violation of the Due Process Clause of the United States Constitution. It involves deprivation of Shah's procedural due process rights.

43. Cooper, Mukundan, and Worth are being sued in their official and individual capacities.

44. Shah had and still has a protected property interest in continuing as a student in UT's M.D. program.

45. During all relevant times UT, Cooper, Mukundan, and Worth acted under color and pretense of law, to wit: under color of the statutes, regulations, policies, customs, and usages of the State of Ohio and more specifically The University of Toledo.

46. An example of denial of Shah's procedural due process rights is that Defendants acted arbitrarily and capriciously in dismissing Shah, or participating in the dismissal of Shah, from the UT M.D. program without a review by the Student Promotions Committee and/or the Medical Student Conduct and Ethics Committee.

WHEREFORE,

As to Count I, plaintiff Leena Shah prays for judgment against defendant The University of Toledo as follows:

A. For equitable and injunctive relief to include reinstatement to UT's M.D. program without penalty so that she can continue and complete her medical school education;

    B. Removal and expungement by UT of the academic dismissal and related documents from all its records and files;

    C. The value of lost employment benefits including future earnings/benefits and front pay;

    D. Reimbursement of tuition and other related expenses covering the entire period of her enrollment in UT's M.D. program as well as payment of her expenses regarding future enrollment into medical school;

    E. Compensatory damages in an amount to be determined at trial;

    F. Reasonable attorney's fees;

    G. Prejudgement interest, post-judgment interest, costs, and expenses; and

    H. Such other and further relief as this Court deems just.

As to Count II, plaintiff Leena Shah prays for judgement against defendants UT, Cooper, Mukundan, and Worth (unless otherwise noted), jointly and severally, as follows:

    A. For equitable and injunctive relief to include reinstatement to UT's M.D. program without penalty so that she can continue and complete her medical school education;

    B. Removal and expungement of the academic dismissal and related documents from all of Defendants' records and files;

    C. The value of lost employment benefits including future earnings/benefits and front pay;

    D. Reimbursement of tuition and other related expenses covering the entire period of her enrollment in UT's M.D. program as well as payment of her expenses regarding future enrollment into medical school;

    E. Compensatory damages in an amount to be determined at trial;

F. (against Cooper, Mukundan and Worth only) Punitive damages in an amount to be determined at trial;

G. Reasonable attorney's fees;

H. Prejudgment interest, post-judgment interest, costs and expenses; and

I. Such other and further relief as this Court deems just.

Respectfully submitted,

*Leena Shah*

Leena Shah
9432 Old Plank Lane
Brighton, MI 48114
Email: leenams@umich.edu

JURY DEMAND

Plaintiff Leena Shah demands a trial by jury on both counts.

*Leena Shah*

Leena Shah